# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| INSTITUTE FOR TRUTH IN MARKETING, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17-cv-2830 (KBJ) |
| TOTAL HEALTH NETWORK CORP., | ) ) | |
| Defendant. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

On November 20, 2017, Plaintiff Institute for Truth in Marketing, Inc.
("IFTIM"), a nonprofit organization that promotes truthful product labeling and
advertising, filed the instant action against Defendant Total Health Network Corp.
("Total Health"), a vitamin and dietary supplement seller, in the Superior Court of the
District of Columbia. (*See* Am. Compl., ECF No. 1-2.)[1] In its amended complaint,
IFTIM alleges that Total Health has advertised its products to consumers in the District
of Columbia using misleading and deceptive price comparisons, in violation of various
provisions of the District of Columbia Consumer Protection Procedures Act ("CPPA"),
D.C. Code §§ 28-3901 *et seq.* Total Health has removed the case to federal court
pursuant to 28 U.S.C. § 1441, asserting that this Court has both federal question
jurisdiction and diversity jurisdiction. (*See* Notice of Removal, ECF No. 1.) Total

---

[1] On the date the complaint was filed, the plaintiff organization was named "American Institute for
Truth in Advertising, Inc." (*See* Am. Compl. at 1.) According to a notice this Court received on April
26, 2018, the organization subsequently changed its name to "Institute for Truth In Marketing, Inc."
(*See* Notice Regarding Change of Name, ECF No. 10.)

Health maintains that federal question jurisdiction exists because "the resolution of Plaintiff's claims will require adjudication of disputed questions of federal law[,]" and alternatively, that there is complete diversity of citizenship and that the amount in controversy exceeds $75,000 when the cost of compliance with the requested injunctive relief, and also attorneys fees, are taken into account. (*Id.* ¶¶ 6–9.)

Before this Court at present is IFTIM's ripe motion to remand the case to state court for lack of subject matter jurisdiction. (*See* Mot. to Remand, ECF No. 6; *see also* Opp'n to Remand, ECF No. 7; Reply in Supp. of Mot. to Remand, ECF No. 8.) For the reasons explained below, this Court finds that IFTIM's state law claims do not arise under federal law, so there is no federal question jurisdiction, and that Total Health has failed to show that the amount-in-controversy requirement is satisfied for the purpose of diversity jurisdiction. Consequently, this Court concludes that it has no subject-matter jurisdiction over this dispute, such that Plaintiff's motion to remand the case to state court must be **GRANTED**. A separate order consistent with this Memorandum Opinion will follow.

## I. BACKGROUND

Total Health runs a website that sells vitamins and dietary supplements to consumers in the United States, including in the District of Columbia. (*See* Am. Compl. ¶ 2.) IFTIM allegedly purchased ten different products from Total Health, each of which was shipped to IFTIM's address in the District of Columbia. (*See id.* ¶¶ 3–4.) In the instant action, IFTIM asserts that Total Health advertised the price for each product "as reduced from a significantly higher comparison price (labeled 'Suggested Retail Price')[,]" but that Total Health's representations regarding the comparison

prices were "fictitious[,]" because there were, in fact, "no substantial sales made at the comparison price[.]"  (*Id.* ¶¶ 5–6.)

Notably, in its one-count complaint, IFTIM claims that Total Health's advertising violates the District of Columbia's consumer protection statute, and in particular, D.C. Code sections 28-3904 (e), (f), (f-1), and (j), which generally prohibit unfair or deceptive trade practices.  (*See id.* ¶¶ 7–8, 20–25, 85–86; *see also id.* ¶ 9 (stating that IFTIM has brought the instant action "to protect the general public from trade practices that violate federal and District of Columbia law" and "to vindicate its statutory rights under the [DC]CPPA[.]").)  Moreover, IFTIM charges that the alleged advertising practices violate D.C. Code section 28-3904(x), which specifically prohibits the sale of consumer goods "in a condition or manner not consistent with that warranted . . . by operation or requirement of federal law[.]"  D.C. Code § 28-3904(x).  IFTIM maintains that Total Health's comparison-price advertising breaches this particular D.C. Code provision because Total Health's conduct violates the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and its corresponding regulations.  (*See id.* ¶¶ 7, 85–86.)  As relief for Total Health's alleged multifaceted violation of the DCPA, IFTIM seeks (1) an injunction requiring Total Health to "cease and desist from falsely advertising any comparison price that misleads, or has a tendency to mislead, consumers in the District of Columbia, provided that the cost of compliance to Defendant Total Health does not exceed $25,000"; (2) statutory penalties under the CPPA of $1,500 for each violation, which total $15,000 for the ten products purchased by IFTIM; and (3) reasonable attorney's fees and costs.  (*See id.*, Relief Requested, ¶¶ A–C.)

On January 2, 2018, Defendant Total Health removed this action to this Court, citing 28 U.S.C. § 1441, and invoking both federal question jurisdiction and diversity jurisdiction. (*See* Notice of Removal, at 1.)[2] Total Health argues that "[t]he entirety of Plaintiff's claims arise under the FTC Act" because the resolution of IFTIM's claims "will require [resolution of] questions of federal law including, potentially, issues arising under the Constitution of the United States." (*Id.* ¶ 9.) Specifically, Total Health contends that all of IFTIM's CPPA claims "rely ineluctably on Plaintiff's mistaken belief that price comparisons like those used by Total Health are 'fictitious' and 'deceptive' *because of 1967 guidance from the FTC.*" (*Id.* ¶ 12 (emphasis added).) Total Health further maintains that there is complete diversity of citizenship—IFTIM is incorporated in Delaware with its principal place of business in the District of Columbia (*see* Am. Compl. ¶ 13; Ex. C to Notice of Removal, ECF No. 1-5), while Total Health is a New York corporation with its principal place of business in New York (*see* Ex. D to Notice of Removal, ECF No. 1-6)—and the amount in controversy exceeds $75,000 because "in addition to a civil penalty of $15,000 and injunctive relief of at least $25,000, Plaintiff seeks recovery of attorney[']s fees authorized by statute." (Notice of Removal ¶ 8.) According to Total Health, given that IFTIM has not expressly limited the amount of attorney's fees in the same way that it has limited the cost of injunctive relief, "meeting or exceeding the jurisdictional amount is more likely than not." (*Id.*)

On February 1, 2018, IFTIM filed the instant motion to remand this matter to Superior Court. (*See* Mot. to Remand.) IFTIM argues that there is no federal question

---

[2] Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns.

jurisdiction because the claim in this case is brought solely under D.C. law and Total Health has failed to show that it fits into the narrow category of cases in which a state cause of action is nevertheless deemed adequate to give rise to federal question jurisdiction. (*See id.* at 7.) IFTIM emphasizes that, first of all, only one aspect of its CPPA claim—its allegation of the violation of D.C. Code section 28-3904(x) — implicates a federal law, and not of the other allegations (alleged violations of sections 28-3904(e), (f), (f-1), and (j)) relate to federal law at all, and furthermore, its theory under section 28-3904(x) is insufficient to raise a substantial federal question. (*See id.* at 7–8.) As to diversity jurisdiction, IFTIM does not dispute that there is complete diversity of citizenship between the parties, but argues that Total Health has failed to meet its burden of proving that the amount-in-controversy requirement is satisfied because, among other things, the "non-aggregation principle" applies in calculating the appropriate amount in controversy, which necessitates that the cost of injunctive relief and any award of attorney's fees be divided by the total number of persons who would benefit, *i.e.*, the general public on whose behalf IFTIM brings the lawsuit. (*See id.* at 5–7.) The remand motion is fully briefed and ripe for this Court's review.

## II.     LEGAL STANDARDS

### A.     Removal On Federal Question And Diversity Grounds

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a); *see Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d 74, 76 (D.D.C. 2016) ("Removal is only proper if the case could have been brought in federal court in the first place."). Accordingly, removal is appropriate

when the case raises a cognizable question "arising under the Constitution, laws, or treaties of the United States[,]" 28 U.S.C. § 1331, or when the case involves citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a).

1. <u>Federal Question Jurisdiction</u>

To determine whether federal question jurisdiction exists, courts apply the "well-pleaded complaint rule," which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As a corollary to this principle, it is well-established that "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

The "vast majority" of claims that the federal courts entertain pursuant to federal question jurisdiction allege a congressionally created cause of action, since "a suit arises under the law that creates the action." *Id.* (internal quotation marks and citation omitted); *see Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (noting that "a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law" (internal quotation marks and alterations omitted)). However, the Supreme Court has also recognized a "special and small category of cases" in which cases brought under state law nevertheless implicate federal issues in a way that triggers federal question jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation marks and citation omitted). There is no hard-and-fast rule for recognizing this special category of cases; instead, courts must exercise

"sensitive judgments about congressional intent, judicial power, and the federal system" in identifying those cases. *Merrell Dow*, 478 U.S. at 810.

The Supreme Court colorfully described the legal landscape that governs federal question jurisdiction when a state law claim is at issue as a "canvas [that] looks like one that Jackson Pollock got to first[,]" and has helpfully restated the pertinent analysis as follows: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (discussing *Grable*, 545 U.S. at 314). Notably, "[a]rising under" federal question jurisdiction is proper for the state law claim only if all four of these conditions are satisfied. *See id.*

2. <u>Diversity Jurisdiction</u>

Diversity jurisdiction exists in the federal courts when there is both complete diversity of citizenship among the parties and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a). When removal is based upon diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy[.]" *Id.* § 1446(c)(2). But "the [defendant's] notice of removal may assert the amount in controversy" in some circumstances; namely, if (1) the complaint seeks "nonmonetary relief[,]" and/or (2) the complaint seeks "a money judgment, but the State['s] practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A). In other words, the defendant may assert that the amount in controversy exceeds the $75,000 threshold in its removal notice "where the monetary value of the relief sought in the complaint is indeterminate on its face or the amount of the claimed money

judgment is actually uncertain by operation of state law[.]" *Apton v. Volkswagen Grp.
of Am., Inc.*, 233 F. Supp. 3d 4, 10 (D.D.C. 2017).

When the defendant seeks removal to federal court, its assertion of the amount in
controversy "should be accepted when not contested by the plaintiff or questioned by
the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553
(2014). However, if the plaintiff disputes the amount in controversy, "[e]vidence
establishing the amount is required[,]" *id.* at 554, and the court reviews materials both
parties submit to determine whether, "by a preponderance of the evidence, [] the
amount in controversy exceeds [$75,000,]" 28 U.S.C. § 1446(c)(2)(B).

## B.    Motion To Remand

Once a defendant has filed a notice of removal, a plaintiff may move for the case
to be remanded back to state court if it believes that the federal court lacks subject
matter jurisdiction. *See* 28 U.S.C. § 1447(c). If a remand motion is filed, the party
seeking removal bears the burden of establishing that subject matter jurisdiction exists.
*See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The district
court "must remand the case" if "it appears that [the federal court] lacks subject matter
jurisdiction over a case that has been removed from a state court[.]" *Republic of
Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002). In making its
determination, the court "must resolve any ambiguities concerning the propriety of
removal in favor of remand." *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53
(D.D.C. 2012).

## III.    ANALYSIS

Defendant Total Health removed the instant deceptive marketing lawsuit to federal court on the basis of both federal question jurisdiction and diversity jurisdiction. Plaintiff IFTIM has requested an order remanding this case to Superior Court on the grounds that this Court does not have subject matter jurisdiction over its claim on either basis.  For the reasons explained below, this Court agrees with IFTIM.

### A.    There Is No Federal Question Jurisdiction Because Plaintiff's Claim Does Not "Arise Under" Federal Law

The complaint in this case alleges one count brought under the District of Columbia CPPA for violations of various provisions of D.C. law:  D.C. Code sections 28-3904(e), (f), (f-1), (j), and (x).  (*See* Am. Compl. ¶¶ 7–8.)  As explained above, "federal jurisdiction over a state law claim will lie [only] if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  And for the reasons explained below, it is clear to this Court that IFTIM's consumer protection claim does not necessarily raise substantial questions of federal law that are capable of resolution in federal court without disrupting the federal-state balance that Congress has contemplated.  Total Health's alternative contention—*i.e.*, that this case raises constitutional issues—is also unavailing, because the alleged constitutional questions have been raised in the context of Total Health's defenses, which do not establish the scope of this Court's jurisdiction under the well-pleaded complaint rule.

1.    IFTIM's Claim Does Not Necessarily Raise Issues Of Federal Law

Total Health contends that IFTIM's CPPA claim necessarily implicates federal law because it "rel[ies] ineluctably" on IFTIM's understanding of federal FTC regulations (Notice of Removal ¶ 12); indeed, says Total Health, "[b]ut for the reference to the federal statute, Plaintiff's claim would not be sustainable under D.C. law" (*id.* ¶ 13; *see also* Opp'n to Remand at 2 ("For [Plaintiff] to make its case, it *must* rely upon a meaning of fictitious set forth in guidance issued by the Federal Trade Commission in 1967[.]")).  In this regard, Total Health appears to have misconstrued the aim of IFTIM's complaint, and as a result, its argument misses the mark.

Properly understood, IFTIM's complaint alleges that Total Health's advertising practices constitute a CPPA violation.  This alleged violation is pled in one count, and happens to be based on five different theories about the manner in which the challenged conduct violates the CPPA.  (*See* Am. Compl. ¶¶ 7–8 (relying on D.C. Code sections 28-3904(e), (f), (f-1), (j), and (x)); *see also* Mot. to Remand at 7.)  The cited provisions are *alternative* bases; any one of these theories of liability is sufficient to sustain the claim alleged.  Furthermore, of the five CPPA provisions that IFTIM cites, *only* section 28-3904(x) implicates federal law—the other sections do not reference federal law or raise any federal issues at all.  *Compare* D.C. Code § 28-3904(x) (prohibiting the selling of consumer goods "in a condition or manner not consistent with that warranted . . . by operation or requirement of federal law") *with* D.C. Code §§ 28-3904(e), (f), (f-1), (j) (prohibiting sellers from, respectively, "misrepresent[ing] as to a material fact which has a tendency to mislead"; "fail[ing] to state a material fact if such failure tends to mislead"; "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead"; and "mak[ing] false or misleading representations of fact concerning the

reasons for, existence of, amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time").

Under these circumstances, IFTIM states a claim that could be granted based on any one of these alternative alleged breaches of the CPPA, which means that IFTIM's claim does not *necessarily* raise a federal issue. And it is well established that "a claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each of those theories." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988); *see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (explaining that *Christianson* applies to determinations of general federal question jurisdiction). Consequently, if there are "reasons completely unrelated to the provisions and purposes of [federal law] why the plaintiff may or may not be entitled to the relief it seeks, then the claim does not arise under those laws." *Christianson*, 486 U.S. at 810 (internal quotation marks, alterations, and citations omitted); *see also Apton*, 233 F. Supp. 3d at 15 (clarifying that "[a] federal issue is necessarily raised when an essential element of a plaintiff's case will necessarily require the application of federal law to the facts of plaintiff's case" (internal quotations, alterations, and citation omitted)).

Here, of the five cited provisions, only section 28-3904(x) requires the resolution of a question concerning federal law; otherwise IFTIM's theory of liability does not implicate federal law in any respect. Thus, IFTIM's claim does not necessarily raise a federal question for the purpose of this Court's subject matter jurisdiction. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1490–91 (9th Cir. 1996) (finding no subject matter jurisdiction where plaintiff's claims were each "supported by at least one state law

theory of recovery not dependent upon [federal law]"); *Millepede Mktg. Ltd. v. Harsley*, 928 F. Supp. 2d 109, 116 (D.D.C. 2013) (finding no subject matter jurisdiction where "the merits of a state-law claim may be resolved without reach or addressing a federal [] law issue").

> 2. The One Federal Issue That IFTIM's Compliant Raises Is Insubstantial, And Its Resolution In This Court Would Disrupt The Federal-State Litigation Balance

Returning to the *Gunn* factors, this Court further notes that Total Health has failed to establish the substantial nature of the one federal issue it has identified in IFTIM's complaint. *See Gunn*, 568 U.S. at 260. As a general matter, in this context, the substantiality inquiry is not based upon whether the federal issue is a significant one to the parties for the purpose of the claims being made in the case; rather, it requires an assessment of "the importance of the issue to the federal system as a whole." *Id.* This Court is confident that the sole federal issue upon which IFTIM's CPPA claim is based is not a substantial one for the purpose of this Court's exercise of federal question jurisdiction, for several reasons.

First and foremost, the federal issue here—the meaning of section 45(a)(1) of Title 15 of the U.S. Code, which IFTIM says Total Health has breached and thereby violated section 28-3904(x) of the CPPA—is not one for which there is a cause of action *under the FTC Act itself*. Section 45(a)(1) of Title 15 makes unlawful "[u]nfair methods of competition" and "unfair or deceptive acts or practices[,]" 15 U.S.C. § 45(a)(1); *see also* 16 C.F.R. §§ 233.1, 233.3, but "[t]he [FTC] Act nowhere purports to confer upon private individuals, either consumers or business competitors, a right of action to enjoin the practices prohibited by the Act or to obtain damages following the commission of such acts." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988–89

(D.C. Cir. 1973).  And as the Supreme Court explained in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, "the congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."  *Merrell Dow*, 478 U.S. at 814; *see also Grable*, 545 U.S. at 318 (explaining that, while the lack of a federal cause of action is not "dispositive of" such congressional intent, the *Merrell Dow* Court saw the lack of a federal private right of action as "a missing welcome mat" that is "worth some consideration in the assessment of substantiality").  In other words, the fact that Congress did not provide a federal cause of action for violations of the FTC Act in the first place strongly suggests that Congress did not believe that this federal issue was substantial enough in the context of the federal system to authorize private claims of this type to be adjudicated in a federal forum.

The relative lack of substantiality of this federal issue is also apparent when this case is compared with others in which federal issues *have* been deemed substantial. *Grable*, for example, involved a question of whether the Internal Revenue Service had given the plaintiff adequate notice when seizing and selling his property, and the Supreme Court reasoned that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."  *Grable*, 545 U.S. at 315. Similarly, in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), the federal issue at stake implicated the actions of the federal government and raised a constitutional issue over whether the federal government's issuance of certain bonds

was unconstitutional, such that the defendant corporation in the shareholder suit could not lawfully purchase them. *See Smith*, 255 U.S. at 199 (noting that the plaintiff's attack is based on "the alleged unconstitutionality of the acts of Congress undertaking to organize the banks and authorize the issue of the bonds"). Stacked next to these issues, the question of whether Total Health's marketing practices violated one of the federal standards for deceptive advertising hardly qualifies as "substantial" in the context of the federal system as a whole.

Indeed, the closest analogue to the instant case in the Supreme Court's jurisprudence is *Merrell Dow*, where the plaintiff's state law negligence claim was based in part on the theory that the defendant manufacturer had allegedly misbranded the drug in violation of the federal requirements in the Food, Drug, and Cosmetic Act ("FDCA"). *See Merrell Dow*, 478 U.S. at 805–06. *That* set of facts—which involved the alleged violation of a federal standard pertaining to the defendant's marketing practices (and is thus strikingly similar to the issue presented before this Court today)— led the Supreme Court to conclude that the federal issue was not substantial, and was therefore insufficient to confer "arising under" jurisdiction. *See id.* at 814. So it is here.

It is also clear to this Court that, even if IFTIM's allegation regarding Total Health's breach of federal advertising standards does qualify as a substantial issue of federal law, this Court's exercise of federal question jurisdiction to address that issue under the circumstances presented here would interfere "with congressional judgment about the sound division of labor between state and federal courts[.]" *Grable*, 545 U.S. at 313. As noted, when Congress enacted the FTC Act and established the federal

standards therein, it made a decision *not* to authorize private lawsuits in federal court to enforce those statutory requirements, and given this considered refusal to permit private citizens to enforce breaches of the FTC standards in the first instance, it would be a strange result indeed for a federal court to nevertheless entertain suits concerning the same alleged breaches in federal court just because that federal issue comes attached to a state-law claim. Under similar circumstances, the Supreme Court has cautioned that it would "flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of the federal statute solely because the violation of the federal statute is said to be [relevant to a claim] under state law, rather than a federal action under federal law." *Merrell Dow*, 478 U.S. at 812.[3]

Nor can it be disputed that extending federal jurisdiction to state law claims that involve FTC standards would likely "attract[] a horde of original filings and removal cases raising *other* state claims with embedded federal issues[.]" *Grable*, 545 U.S. at 318 (emphasis added); *see also id.* ("[I]f the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action."). Such an unintended consequence—which might ultimately involve the potential shift of a sizable number of state-law cases into

---

[3] The alleged federal issue in *Merrell Dow* was relevant to the state law cause of action in that case because it was a "proximate cause" or a "presumption" in the state negligence claim brought in that case, and the Supreme Court concluded that it would upset the federal-state balance to permit the state claim to proceed in federal court based on this nexus to federal law. *Merrell Dow*, 478 U.S. at 812. How much more so for the D.C. claim at issue here, where the District of Columbia has opted to incorporate wholly any federal violations such that the federal question presented is the entirety of the state cause of action? The fact that there is no separate non-federal substantive content to IFTIM's state law claim means that, by exercising jurisdiction over that claim, this Court would be directly addressing a legal contention that Congress has already determined should not be litigated in the federal courts.

federal court by virtue of a jurisdictional hook that Congress chose not to provide in a federal cause of action—undoubtedly disrupts the balance that Congress struck.

This all means that, in circumstances such as the one presented here (*i.e.*, where the District of Columbia has essentially provided a cause of action for the enforcement of a federal duty that Congress did not wish to have privately enforced) it would be unmistakably disruptive to Congress's intent to open the backdoor to the federal courts and allow what would likely be a flood of state-law litigation regarding all sorts of otherwise unenforceable federal standards under the courts' "arising under" jurisdiction.  Therefore, this Court must conclude that IFTIM's state law claim fails to satisfy the requirements of the special category of state law cases that can be the basis of this Court's subject matter jurisdiction because they necessarily raise a substantial federal issue that can be addressed in federal court without disrupting the federal-state balance that Congress has crafted.

       3.       <u>Defendant's Arguments Regarding Potential Federal Defenses Are Unavailing</u>

Undaunted, Total Health suggests that, even if IFTIM has not directly raised a federal question that can ground this Court's subject matter jurisdiction, this Court can exercise "arising under" jurisdiction in this removed action based on the fact that "Plaintiff's interpretation of the [CPPA] raises substantial questions under the United States Constitution[,]" such as restrictions on commercial speech and placing an undue burden on interstate commerce.  (Notice of Removal ¶ 14.)  Total Health is mistaken.

Under the well-pleaded complaint rule, a federal court must analyze the issues raised in a case based on the face of the complaint, and *not* on the basis of any federal defenses that the defendant may raise in response to the plaintiff's claims.  *See*

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463

U.S. 1, 10 (1983). Thus, although Total Health asserts that "Plaintiff's interpretation"

of the District of Columbia law raises constitutional issues (Notice of Removal ¶ 14),

because its constitutional contentions are plainly in the nature of a defense—*i.e.*, IFTIM

is not alleging any constitutional violation, nor does the complaint itself pose any other

constitutional issues—this alleged interaction with constitutional questions cannot be

the basis for this Court's exercise of subject-matter jurisdiction. Indeed, Total Health

appears to allege that federal jurisdiction is proper because application of the CPPA

(which IFTIM seeks to promote) would impermissibly regulate commercial speech (in

violation of the First Amendment) and would impose an undue burden on interstate

commerce (contrary to Commerce Clause principles). (*See* Notice of Removal ¶ 14; *see*

*also* Mot. to Remand at 10 (arguing that Defendant has raised "various possible

defenses").) But IFTIM's *claims* do not rely on any such constitutional issue; therefore,

Total Health's assertion of these potential constitutional defenses is an insufficient

basis upon which to conclude that this Court has federal question jurisdiction over this

matter. *See Vaden*, 556 U.S. at 60; *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S.

149, 152 (1908).

In short, IFTIM's state-law CPPA claim neither necessarily requires the

resolution of a substantial question of federal law, nor can it be resolved in federal

court without disturbing the federal-state balance contemplated by Congress, and

therefore, this Court cannot exercise federal question jurisdiction over the matter

notwithstanding the fact that Total Health plans to raise certain constitutional defenses.

Consequently, Total Health's removal of this case based on federal question jurisdiction wass improper.

**B.     There Is No Diversity Jurisdiction Because The Amount In Controversy Does Not Exceed $75,000**

Not only has Total Health failed to establish that this Court has federal question jurisdiction, it has also failed to demonstrate that the requirements for the exercise of diversity jurisdiction have been met.  To be sure, it is undisputed that there is total diversity of citizenship because no defendant is from the same state as any plaintiff in this case.  (*See* Notice of Removal ¶ 7; Am. Compl. ¶ 13.)  *See also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  But the amount in controversy does not clearly exceed the statutory threshold of $75,000 under the circumstances presented here.  *See Organic Consumers Ass'n*, 222 F. Supp. 3d at 77.  And even if it did, under the non-aggregation principle, the projected amount in controversy must be divided among the beneficiaries of cases that are brought in the public interest, such as this one.

1.     Total Health Has Not Demonstrated All Of The Alleged Components Of The Amount In Controversy

As a threshold matter, Total Health has not provided any support for two of the three figures upon which it bases the argument that the $75,000 threshold has been exceeded in this case.  Specifically, Total Health claims that the amount in controversy exceeds $75,000 based on the sum of the following: (1) a civil penalty of $15,000; (2) injunctive relief costing at least $25,000; and (3) attorney's fees, which, "more likely than not[,]" will exceed $35,000.  (Notice of Removal ¶ 8.)  There is no dispute that, if successful, IFTIM would be entitled to $15,000 in civil penalties under the CPPA, because it has brought unfair marketing claims under the CPPA regarding ten different products (*see* Am. Compl. ¶¶ 3, 33–73), and per the CPPA, the plaintiff may recover

$1,500 per violation, which makes for a total of $15,000 in civil penalties, *see* D.C. Code. § 28-3905(k)(2)(A). (*See also* Am. Compl., Relief Requested ¶ B (asking for "[s]tatutory civil penalties in the amount of $1,500 for each of Defendant Total Health's violations of the CPPA, for a total of $15,000, as calculated by the total number of products purchased by Plaintiff [] from Defendant"). But Total Health has offered no *evidence* to support its contention that it would cost $25,000 to comply with the injunctive relief that IFTIM seeks, nor has Total Health demonstrated that the attorney's fees in this case would be greater than $35,000—components that are necessary for the amount in controversy in the instant case to exceed the $75,000 threshold. *Cf. Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971) ("[P]articularly where purely injunctive relief is sought, the amount in controversy may be measured by either the value of the right sought to be gained by the plaintiff or the cost (of enforcing that right) to the defendant." (alteration, internal quotation marks and citation omitted)), *rev'd on other grounds*, 408 U.S. 1 (1972); *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013) (including projected attorney's fees in its amount in controversy calculation).

It is well established that a defendant may not rely on sheer speculation to satisfy its burden of showing the amount in controversy. *See Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (holding that defendant failed to establish the existence of diversity jurisdiction because it "provide[d] no evidentiary support" for its claim that the total cost of injunctive relief "is certain to exceed $75,000") (internal quotation marks and citation omitted); *cf. Organic Consumers Ass'n*, 222 F. Supp. 3d at 77 (assessing the cost of the injunctive relief based on declarations submitted by the

defendant that detailed the cost of compliance, including the costs of destroying existing inventory, hiring a branding firm to redesign labels, and launching a different advertising campaign). Yet, with respect to IFTIM's requested injunctive relief and attorney's fees, sheer speculation is all that Total Health has offered.

The fact that IFTIM's complaint places a cap on Total Health's cost of complying with the requested injunctive relief—(*see* Am. Compl., Relief Requested ¶ A (requesting "[a]n injunction . . . provided that the cost of compliance to Defendant Total Health does not exceed $25,000")—is of no moment. Although such language clearly indicates that IFTIM has "voluntarily limit[ed] the cost to Total Health of the injunctive relief that [IFTIM] seeks" (Notice of Removal ¶ 8), it does not prove that such injunctive relief would, in fact, cost at least $25,000. And Total Health provides no factual basis from which to infer that IFTIM's voluntary limit on the cost of the injunction is a viable or accurate estimation of how much it would actually cost Total Health to change its marketing practices. Therefore, the complaint's limitation is wholly irrelevant to Total Health's claim that the cost would be "at least $25,000." (*Id.*)

With respect to attorney's fees, Total Health's showing is even weaker. When attorney's fees are provided for by statute, they may form part of the amount-in-controversy calculation. *See Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (explaining that "[a]lthough 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action" under

Supreme Court precedent (citation omitted)).  Because the CPPA provides for the recovery of reasonable attorney's fees, *see* D.C. Code. § 28-3905(k)(2)(B), such attorney's fees may be considered as part of the amount in controversy in this case.  *See Zuckman*, 958 F. Supp. 2d at 301 (finding that attorney's fees are properly considered as a part of the amount in controversy in a CPPA case because the statute provides for the recovery of attorney's fees); *Sloan v. Soul Circus, Inc.*, No. 15-01389, 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) (same).

To this end, Total Health argues that Plaintiff's attorney's fees are "more likely than not" to exceed $35,000, because IFTIM has not capped the amount of fees it would seek.  (Notice of Removal ¶ 8 (highlighting the fact that IFTIM has not "limit[ed] the amount of attorney['s] fees it will seek at no more than $34,999.999").)  This reasoning suggests that, in the absence of any such limitation, the attorney's fees in this matter *could* exceed the amount that is necessary to boost the total amount-in-controversy over the $75,000 threshold (i.e., $35,000), but that kind of analysis is not the stuff upon which valid amount-in-controversy assessments are ordinarily made.  That is, IFTIM's decision not to limit the attorney's fees it seeks says nothing about whether the attorney's fees related to this matter will "more likely than not" exceed $35,000, and with respect to *that* contention, Total Health has put forward zero proof.  (Notice of Removal ¶ 8.)  Thus, this Court has no basis upon which to find, by a preponderance of the evidence, that the cost of the injunction or the attorney's fees in this case are the amounts that Total Health asserts, such that the amount-in-controversy requirement is satisfied.  *See Sloan*, 2015 WL 9272838, at *9 (finding that "bald assertions" about likely attorney's fees that are based on pure conjecture are inadequate to support an

assertion of diversity jurisdiction); *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 74 (D.D.C. 2014) ("Defendant's speculation or conclusory statements as to the amount of attorney's fees is insufficient to establish a jurisdictional amount."); *cf. Zuckman*, 958 F. Supp. 2d at 301 (making an amount-in-controversy determination based on affidavits submitted by plaintiff's lawyers regarding the hours they had worked and their billing rates).

2. <u>Even If Total Health Had Made The Requisite Showing, The Amount Falls Short of $75,000 Because Of The Non-Aggregation Principle</u>

Total Health's failure to support the alleged components of the asserted amount-in-controversy is not its only shortcoming as far as diversity jurisdiction is concerned. Even if there was sufficient evidence to support the assertion that the amount in controversy in this case is at least $75,000, the "non-aggregation principle" would apply to the injunctive relief requested, and would require that the asserted amount to be divided by the number of beneficiaries, causing the total amount in controversy to fall far short of the $75,000 statutory threshold.

The non-aggregation principle provides that "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Although the D.C. Circuit has not spoken to the application of the non-aggregation principle to representative suits such as this one, courts in this district routinely apply this rule when considering the amount in controversy in cases that seek injunctive relief and, like this one, are brought "on behalf of . . . the general public[.]" (Am. Compl. ¶ 80 (citing D.C. Code. § 28-3905(k)(1)(A) & (C), which provides that nonprofit organizations may bring CPPA suits on behalf of itself, its members, and the general public).) *See Animal Legal Def.*

*Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 60 (D.D.C. 2017) (recognizing that

there is no "binding precedent on this issue" in this Circuit but acknowledging that

district courts in this jurisdiction have found that the non-aggregation principle applies

to lawsuits brought under the CPPA); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F.

Supp. 3d 163, 170–171 (D.D.C. 2017) (same); *Breakman v. AOL LLC*, 545 F. Supp. 2d

96, 103–105 (D.D.C. 2008).

      Consistent with persuasive precedents in this district, this Court concludes that

the appropriate measure of the requested injunctive relief is not the amount that Total

Health must spend to comply with the injunction, but that amount *divided by* the

number of members of the public on whose behalf Plaintiff brings the action. *See, e.g.*,

*Animal Legal Def. Fund*, 249 F. Supp. 3d at 60; *Breathe DC*, 232 F. Supp. 3d at 170–

171; *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015); *Breakman*, 545

F. Supp. 2d at 103–105. Thus, even if Total Health had shown sufficient support for its

assertion that it would have cost at least $25,000 to comply with the proposed

injunction (Notice of Removal ¶ 8), that figure must then be divided by the several tens

of thousands of consumers in the District of Columbia on whose behalf IFTIM brings

the instant CPPA case, which brings the appropriate figure with respect to the

injunctive costs to a single digit or even less. *Cf. Breakman*, 545 F. Supp. 2d at 106–

107 (dividing the cost of injunctive relief among 28,541 estimated District of Columbia

consumers).

      Courts in this district have also applied the non-aggregation principle to

attorney's fees in CPPA actions brought on behalf of the public. *See, e.g.*, *Animal

Legal Def. Fund*, 249 F. Supp. 3d at 62 (agreeing with the plaintiff's assertion that "it

would be inappropriate for the Court to consider the total amount of potential attorneys' fees for the same reason that it would be inappropriate to consider the total cost of Defendant's compliance with the requested injunction") (emphasis omitted); *Breakman*, 545 F. Supp. 2d at 107 (explaining that "the non-aggregation principle logically should extend to claims of attorneys' fees").  Therefore, even assuming that Total Health provided adequate support for its assertion that attorney's fees in this action exceed $35,000, again, that cost shrinks considerably when divided across the consumers on whose behalf IFTIM brings the action.

For all these reasons, this Court cannot conclude that Total Health has demonstrated, by a preponderance of the evidence, that the amount in controversy here exceeds $75,000, such that it can exercise diversity jurisdiction over the instant action. *See* 28 U.S.C. § 1446(c)(2)(B).

## IV.    CONCLUSION

Total Health has removed this case to federal court, but it has failed to establish that this Court can exercise either federal-question jurisdiction or diversity jurisdiction over IFTIM's CPPA claim.  Consequently, this Court finds that it has no subject matter jurisdiction over the instant case, which means that Plaintiff's Motion for Remand for Lack of Subject Matter Jurisdiction (ECF No. 6) must be **GRANTED**, and this case must be **REMANDED** back to the Superior Court of the District of Columbia, as set forth in the accompanying Order.

DATE:  August 13, 2018                            *Ketanji Brown Jackson*
                                                   KETANJI BROWN JACKSON
                                                   United States District Judge